# SUPREME COURT—IN ADMIRALTY.

### HART AND HANSEN *vs.* SEVEN CASES OF SPECIE.

IN ALL cases of salvage service, the amount to be awarded rests in the discretion of the Court, guided by an enlightened judgment upon all the circumstances of the particular case; but where the saving of life was connected with the saving of property, although no personal peril was incurred by the salvors, yet the former act was regarded by the Court in adjudicating upon the measure of the compensation to be paid to the libellants.

Before Associate Justice ROBERTSON.

This is an action *in rem*, brought by the libellants, as owners of the British ship "Achilles," commanded by Henry T. Hart, the first named libellant, to recover compensation for salvage services alleged to have been rendered by them, in saving from the American ship "Mastiff," burnt at sea, seven wooden boxes and one iron chest, admitted to contain about $83,000 in specie and bullion, together with sundry articles of ship's furniture, the value of which as sold at auction is $392 98.

The facts of the case are in substance as follows :

The clipper ship "Mastiff" sailed from San Francisco on the 10th of September ultimo, bound for China *via* the port of Honolulu, having on board, in all, 208 persons, 175 of whom were Chinese passengers. On the 15th of September, at about half-past four o'clock P. M., when in lat. 30 ° 46' N., and lon. 128 ° 35' W., or thereabouts, the "Mastiff" was discovered to be on fire some where abaft of the main hatch ; the smoke came up through the ventilator, and Captain Johnson caused the hose to be put to the force pump and sent hands below with it to endeavor to extinguish the fire, but they returned immediately, being driven back by the dense smoke ; the pump was stopped, the Captain threw the powder magazine overboard, and caused the usual signal of distress to be made, which was seen by the officers of the ship "Achilles," then distant about four miles from the "Mastiff;" the "Achilles" closed to within a convenient distance of the burning ship and was hove-to to windward of her, being skillfully manœuvered, from time to time, so as to keep a good position ; the boats of the "Mastiff" were lowered,

as also one boat from the "Achilles," which rendered material aid in the saving of the Chinese passengers, who were at first much excited, but were restrained from rushing into the boats by the officers and cabin passengers of the "Mastiff," and reassured by the proximity of the "Achilles." In the space of little more than an hour all the lives were saved with the exception of one Chinaman, who it is supposed went below and was suffocated, and efforts were made, but in vain, to save some provisions, but Capt. Johnson succeeded, by cutting a hole through the deck, in saving the specie and bullion, which was carried to the "Achilles" in one of the "Mastiff's" boats, and the burning ship was abandoned to her fate. The wind at the time was very light and the sea smooth, but the witnesses agree in saying that but for the providential intervention of the "Achilles," the circumstances of the case were such that all on board of the "Mastiff" would probably have perished, and the treasure which has been saved must have been lost. The "Achilles" was bound direct for Sydney, N. S. W., with a cargo of 15,000 bags of wheat, but it was agreed that she should proceed to the port of Honoluln, where she arrived on the 27th ultimo.

The case has been argued with ability on its merits by the counsel on both sides, but no point of law has been raised calling for especial notice, save the objection urged by counsel for respondent that the service rendered by the "Achilles" was not a salvage service, and that therefore a claim for compensation upon it is not cognizable in this Court. This objection I consider clearly unsound, and after a careful examination of the facts of the case, which, as they appear upon the pleadings, and have been detailed by the witnesses on the stand, are unusually clear and free from complication, I am of opinion that the libellants are justly entitled to recover, as for a valuable salvage service rendered by their ship, in saving the property libelled from imminent peril at sea—a peril so imminent that I regard the destruction of the property, but for its timely rescue by the intervention of the "Achilles," as inevitable.

For the mere preservation of life, however meritorious the service, this Court has no power to remunerate the salvors; but where, as in the present case, the saving of life is connected

with the saving of property, the former is not to be wholly lost sight of. (The Aid, Eng. Ad. Rep., vol. 1, p. 84.) It is evident that the efforts of the salvors in the present case were not prompted by interested motives, but by the purest humanity, for they knew nothing of the existence of the treasure until after the rescue of all the lives in jeopardy; and there can be no doubt that ·the proximity and skillful management of the " Achilles," ably seconded as these were by the admirable conduct of the ship's company and cabin passengers of the " Mastiff," were the means of preventing a fearful loss of life.

While the salvage service performed by the libellants was rendered in the saving of property of great value, the owners of which have consequently been benefited in a corresponding degree by its preservation; and although the property was exposed to the most imminent peril of destruction, yet the case, in its circumstances, is wholly destitute of some important ingredients, such as personal peril or arduous labors of the salvors, or great risk to the salving ship—ingredients which are always regarded by Courts of Admiralty as affording good grounds for awarding to the salvors a large recompense.

In all cases the amount of salvage necessarily rests very much in the discretion of the Court, which, exercising an enlightened judgment upon all the circumstances of the case, and keeping in view the rights of both parties, should give such a fair and liberal compensation as shall subserve the great interests of commerce and navigation, by stimulating those whose business is upon the deep, to the performance of good deeds with alacrity and zeal, by the hope of receiving a befitting pecuniary recompense, as well as the grateful thanks of those whose lives may thus be saved. Without any positive rule to guide me in measuring the reward which the salvors ought to receive in this case, but after a careful perusal of the numerous cases referred to in the course of the argument, and bearing in mind the general and well established principles, which are recognized by the able and enlightened Admiralty Courts of England and America, in adjudicating upon salvage claims, I have determined, keeping, I think, within the bounds of moderation, to pronounce in favor of the libellants, as follows, viz. :

For salvage on the seven boxes and one chest of specie and

bullion, the sum of seven thousand five hundred dollars; and for salvage on the other articles, which have been sold by consent of parties, the one-tenth part of their net proceeds; the costs and expenses of this adjudication to be borne by the treasure.

Let decree be entered accordingly in favor of the libellants.

J. Montgomery, Esq., for libellants.

J. D. Blair, Esq., for respondent.